IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**UNITED STATES OF AMERICA,**
    Plaintiff,

v.                                                                                                             5:21-cr-35-JA-PRL

**LONNIE LORENZO HOLLINGSWORTH, JR.,**
    Defendant.
_____/

**REPORT AND RECOMMENDATION**[1]

Defendant Lonnie Lorenzo Hollingsworth, Jr. is charged by indictment with one count of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and § 924(a)(2). (Doc. 1). A jury trial is set for the September 2021 trial term. (Doc. 36).

Hollingsworth has moved to suppress evidence obtained as a result of what he contends was an illegal Baker Act detention, and his post-arrest statements. (Doc. 24). On July 21, 2021, the Court held an in-person hearing on Hollingsworth's motion. The government presented the testimony of Ocala Police Officers Robert Crossman, Branden McCoy, Shelby Prather, and Sergeant Kyle Howie. In addition to the witness testimony, both the government and Hollingsworth introduced body camera footage from Officers Crossman, McCoy, and Prather; the audio and transcript of a 911 call placed by Hollingsworth on April 5, 2021; and the rear seat in-car camera video from Officer Prather's patrol vehicle. For the

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

reasons discussed below, Hollingsworth's motion to suppress (Doc. 24) should be granted as to his confirming statement about his backpack, but otherwise denied.

## I. BACKGROUND

On April 5, 2021, Hollingsworth called 911 and asked the dispatcher to relay a direct message to Marion County Sheriff Billy Woods. The dispatcher asked if there was an emergency, to which Hollingsworth replied "yeah, this is it. . . this is the emergency, I'm about to let you know." Hollingsworth then told the dispatcher to "let [Sheriff Billy Woods] know that, for his role that he played in what happened to Lonnie Lorenzo Hollingsworth, Jr. on March 10, 2013,[2] tell him whenever, whenever he's ready to come out and, and, and, get exposed for his role in that, let him know that whenever it's time, whenever God give him time, like, like, like they set me up and, and he set me up for this, let them know that when all this get exposed and they call for this position they get, let him know, when it's time and God get me to him and God can put me in a position to do it, I'm going to unload a whole fucking clip in his fucking face, in his whole fucking cranium in front of all his employees and his bosses." Hollingsworth continued to discuss the March 2013 incident and then ended the call – he sounded angry and was cursing.

Officer Crossman was dispatched to the RaceTrac gas station in Ocala, Florida to address Hollingsworth's 911 call. When he arrived, Hollingsworth broadcast their interaction on Facebook live – or at least claimed to be doing so. About five to ten minutes later, field training Officer Prather arrived with her trainee, Officer McCoy, and Hollingsworth's call was assigned to her. At that point, none of the officers had listened to Hollingsworth's 911

---

[2] In March 2013, Hollingsworth was shot and then convicted of a robbery. Hollingsworth appears to blame the Marion County Sheriff's Office for this incident.

call, and only knew that it involved a threat to Sheriff Billy Woods. The officers testified that Hollingsworth was generally respectful and cooperative, but he continued to insist that Sheriff Billy Woods and the entire Marion County Sheriff's Office respond to the location in full force, with guns drawn. Hollingsworth continued to obsess over the March 2013 incident but denied he made a threat to Sheriff Billy Woods. Hollingsworth was adamant that the officers listen to the 911 call to see he threatened no one and only wished to meet with Sheriff Billy Woods. While Hollingsworth expressed his anger over the March 2013 incident, he mentioned his prior felony robbery conviction from the incident.

    Sergeant Howie arrived at the scene but had little interaction with Hollingsworth. Officer Prather's body camera footage shows Sergeant Howie staying in his car for most of the incident. After Sergeant Howie arrived, Officer Prather and Sergeant Howie listened to Hollingsworth's entire 911 call. Officers Crossman and McCoy stayed with Hollingsworth and continued to listen to him discuss the 2013 incident. After Officer Prather and Sergeant Howie listened to the 911 call, Officer Prather walked over to where Hollingsworth was sitting and notified him that they were detaining him under the Baker Act and transporting him to the Centers. Hollingsworth was handcuffed and walked to Officer Prather's patrol vehicle.

    Officer McCoy searched Hollingsworth for weapons and Hollingsworth repeated that they could check his pockets because he was not a threat. Hollingsworth notified the officers that he was homeless, to which Officer Crossman asked if Hollingsworth had a camp, and that he was trying to find out if he had any firearms. Hollingsworth insisted that he had no weapons and asked the officers to check his bag, located on the picnic tables next to the RaceTrac. Officer Crossman testified that Hollingsworth specifically pointed to where his bag

was located, and mentioned that his backpack, battery charger, and power cord were all on the picnic table.

Officer Crossman retrieved the bag from the picnic table and brought it back to the patrol vehicle. A search of the bag revealed a single round of nine-millimeter ammunition. Sergeant Howie joined the other officers at this point and asked Officer Crossman if he confirmed that the bag indeed belonged to Hollingsworth. Officer Crossman explained to Sergeant Howie that Hollingsworth asked them to check the bag and told them where it was, but Sergeant Howie insisted that Officer Crossman ask again to confirm. An officer then opened the patrol vehicle door and held the backpack in front of Hollingsworth while Officer Crossman asked if the bag was his. Hollingsworth responded that it was. Sergeant Howie then instructed Officer Prather to take Hollingsworth to jail for possession of ammunition by a convicted felon.

Video footage from the back of Officer Prather's patrol vehicle shows Hollingsworth turned to the side looking at the window. Officer Prather asked Hollingsworth, "Lonnie, can you hear me? I need you to listen to me, okay?" Hollingsworth replied that he was listening. Officer Prather then told Hollingsworth, "whenever we searched your backpack we found— we found a bullet, okay?" To which Hollingsworth responded, "it's my lucky bullet." Officer Prather then told him that because he is a convicted felon, he cannot have a bullet and was going to jail for possession of ammunition by a convicted felon. The officers then took Hollingsworth to jail.

## II.   LEGAL STANDARD

A warrantless arrest or detention without probable cause violates the Fourth Amendment. *Gates v. Khokhar*, 884 F.3d 1290, 1297-98 (11th Cir. 2018). Probable cause exists

if "the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Watkins v. Bigwood*, 797 F. App'x 438, 442 (11th Cir. 2019) (quoting *Gates*, 884 F.3d at 1297-98). The existence of probable cause "depends on the elements of the alleged crime and the operative fact pattern." *Id.* (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010)).

Under the Fifth Amendment, "the burden is on the defendant to establish he was in custody and the statements were made in response to government questioning." *United States v. Aldissi,* No. 8:14-CR-217-T-33EAJ, 2015 WL 1268284, at *3 (M.D. Fla. Mar. 19, 2015); *United States v. de la Fuente*, 548 F.2d 528, 533–34 (5th Cir.1977). Indeed, "[t]he right to Miranda warnings [only] attaches when custodial interrogation begins." *United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004). "A defendant is in custody for the purposes of Miranda when there has been a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). An interrogation is defined as "'express questioning' initiated by police officers or its 'functional equivalent,' namely 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Villegas-Tello*, 319 F. App'x 871, 875 (11th Cir. 2009) (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980)).

### III. Discussion

#### A. Probable cause

Initially, the officers detained Hollingsworth under Florida's Mental Health Act, known as the Baker Act. Fla. Stat. § 394.463. The Baker Act provides that "[a] person may be taken to a receiving facility for involuntary examination if . . . [t]here is substantial likelihood that in the near future he or she will inflict serious bodily harm on self or others, as evidenced by recent behavior causing, attempting, or threatening such harm." Fla. Stat. § 394.463(1)(b)(2). For Hollingsworth to be detained lawfully under the Baker Act, the officers must have "believe[d] that a 'substantial likelihood' existed that [Hollingsworth] would cause 'serious bodily harm' to himself or to others in the near future." *Watkins v. Bigwood*, 797 F. App'x 438, 442 (11th Cir. 2019). Hollingsworth claims the officers did not have probable cause to Baker Act him and moves to suppress any evidence obtained as a result of his detention as fruit of the poisonous tree.

At the beginning of Hollingsworth's encounter with the officers, the officers observed that Hollingsworth was relatively calm, cooperative, and didn't seem to be a threat to anyone. Regardless of what the individual officers thought at various moments during their encounter with Hollingsworth, the totality of the circumstances gave the officers sufficient probable cause to have Hollingsworth detained under the Baker Act.

Hollingsworth claims that for nearly an hour after the officers arrived at the scene, he tried to explain that he only wanted to talk to Sheriff Woods. Hollingsworth argues, "while this may have been difficult for the police to understand, having trouble communicating is not a basis for involuntary hospitalization under the Baker Act." (Doc. 24, p. 9). However, this version of events was not the one presented at the hearing.

During the 911 call, the dispatcher asked Hollingsworth if there was an emergency, to which he replied, "yeah, this is it. . . this is the emergency, I'm about to let you know."

6

Hollingsworth then told the dispatcher to tell Sheriff Woods "I'm going to unload a whole fucking clip in his fucking face, in his whole fucking cranium in front of all his employees and his bosses."

When the officers arrived at the scene, Hollingsworth continued to obsess over the opportunity to meet with Sheriff Woods. The body camera footage shows Hollingsworth raising his voice while discussing the March 2013 incident and demanding that the Marion County Sheriff's Office come out with their guns drawn. Hollingsworth captured almost the entire interaction with the officers on his Facebook live broadcast, in which he repeatedly spoke directly into his phone and called for Sheriff Woods to come to his location.

Officer Prather testified that she considered Hollingsworth's 911 call, his behavior at the scene, and his previous convictions involving firearms in her decision to detain him under the Baker Act. Officer Prather stated that the fact that Hollingsworth insisted to the 911 dispatcher that it was an emergency before making his threat was an indication that there was an immediate threat to Sheriff Woods. Given the totality of the circumstances, Officer Prather concluded that there was a substantial likelihood that Hollingsworth would inflict serious bodily harm on either Sheriff Woods or others at Marion County Sheriff's Office in the near future.

Hollingsworth argues that there was no substantial likelihood of an immediate threat because of the conditional language he used in the 911 call. Hollingsworth claims several conditions had to be met before he would shoot Sheriff Woods. Specifically, Hollingsworth's conditions were "whenever, whenever he's ready to come out and, and, and, get exposed for his role in that, let him know that whenever it's time, whenever God give him time, like, like, like they set me up and, and he set me up for this, let them know that when all this get exposed

and they call for this position they get, let him know, when it's time and God get me to him and God can put me in a position to do it . . ." he would shoot Sheriff Woods. The Court is not convinced. Hollingsworth's "conditions" are not conditions at all. They are his own made up circumstances for when he will shoot the Marion County Sheriff. Indeed, Hollingsworth continued to ask the officers if Sheriff Woods would be reporting to the scene, and he called out to Sheriff Woods on Facebook live, telling him to arrive with guns drawn. Officer Prather had sufficient probable cause to conclude that there was a substantial likelihood that Hollingsworth would inflict serious bodily harm to Sheriff Woods or others in the near future.

Because the officers had probable cause to detain Hollingsworth under the Baker Act, the ammunition discovered in his backpack and his statements made about the bullet should not be suppressed as "fruit of the poisonous tree."

Based upon the evidence presented at the hearing, I submit that the officers had probable cause to detain Hollingsworth under Florida's Baker Act. Accordingly, Hollingsworth's motion to suppress evidence obtained as a result of his detention is due to be denied.

### B. Statements

Hollingsworth moves to suppress two statements he made during his time in custody: (1) his statement confirming that the bag containing the ammunition was his and (2) his statement confirming that the ammunition found in the bag was "his lucky bullet."

The Fifth Amendment requires *Miranda* warnings be given to a suspect when he is interrogated while in custody. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). "[T]he burden is on the defendant to establish he was in custody and the statements were made in response to government questioning." *United States v. Aldissi*, No. 8:14-CR-217-T-33EAJ, 2015 WL

1268284, at *3 (M.D. Fla. Mar. 19, 2015); *United States v. de la Fuente*, 548 F.2d 528, 533–34 (5th Cir.1977).[3] An interrogation is defined as "'express questioning' initiated by police officers or its 'functional equivalent,' namely 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Villegas-Tello*, 319 F. App'x 871, 875 (11th Cir. 2009) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). Under *Miranda*, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [*Miranda* itself]." *Miranda*, 384 U.S. at 486.

### 1. *Statement confirming the bag*

When asked if he had any weapons or owned any firearms, Hollingsworth said he did not and told the officers to search his pockets and his bag. Hollingsworth told the officers that his bag was located on the picnic tables next to the RaceTrac. Officer Crossman testified that Hollingsworth specifically pointed to where his bag was located, and mentioned that his backpack, battery charger, and power cord were all on the picnic table.[4]

---

[3] All decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981 are binding on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

[4] As noted, during his search incident to his Baker Act detention, the officers asked Hollingsworth if he had or owned a firearm. In response he said he had a backpack and he insisted repeatedly that the officers retrieve it and search it, which they did. The officers testified that once he told them to get the backpack they weren't going to leave it and needed to search it pursuant to policy because it was going to go with him to the Centers - they needed to ensure there wasn't a firearm in it before they put it in the patrol car for his transport. In closing argument, counsel argued Defendant didn't sign a consent for the search of his bag. What is clear from the video, however, is that Hollingsworth repeatedly insisted it be retrieved and searched. And what is clear from the testimony is that the officers searched it incident to his anticipated transport in their patrol car to the Centers. *Cf. United States v. Rhind*, 289 F.3d 690, 694 (11th Cir. 2002) (finding that even if probable cause did not exist to conduct a search of a bag, the contents of the bag would have been admissible because the officers would have discovered the evidence during a routine inventory search); *United States v. Freyre-Lazaro*, 3 F.3d 1496, 1500–01 (11th Cir. 1993) ("It is well-settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.").

Officer Crossman retrieved the bag from the picnic table and brought it back to the patrol vehicle. A search of the bag revealed a single round of nine-millimeter ammunition. Sergeant Howie asked Officer Crossman if he confirmed that the bag indeed belonged to Hollingsworth and insisted that Officer Crossman ask again to confirm ownership of the bag. An officer then opened the patrol vehicle door and held the backpack in front of Hollingsworth while Officer Crossman asked if the bag was his. Hollingsworth responded that it was. Hollingsworth moves to suppress this statement.

At the hearing, the government conceded that this statement was problematic and did not offer a defense. Hollingsworth was "in custody" when Officer Crossman asked him about the bag because he was already handcuffed and in the back of the patrol vehicle. *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006). Officer Crossman's question was reasonably likely to elicit an incriminating response because the officers knew Hollingsworth was a convicted felon and the officers had already found the ammunition in his backpack. *Villegas-Tello*, 319 F. App'x at 875. Therefore, I submit that Hollingsworth's statement confirming that the bag was his is due to be suppressed.

2. *Statement about the bullet*

When Hollingsworth was placed in the back of Officer Prather's patrol vehicle, he was still under the impression that he was going to the Centers under the Baker Act. Video footage from the back of Officer Prather's patrol vehicle shows Hollingsworth turned to the side looking at the window. Officer Prather asked Hollingsworth, "Lonnie, can you hear me? I need you to listen to me, okay?" Hollingsworth replied that he was listening. Officer Prather then told Hollingsworth, "whenever we searched your backpack we found—we found a bullet, okay?" To which Hollingsworth responded, "it's my lucky bullet." Officer Prather then

10

told him that because he is a convicted felon, he cannot have a bullet and was going to jail for possession of ammunition by a convicted felon. Hollingsworth now moves to suppress the statement about his "lucky bullet."

An interrogation under *Miranda* is any questions, words, or actions that "the police should know are reasonably likely to elicit an incriminating response from the suspect." *Villegas-Tello*, 319 F. App'x at 875. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [*Miranda* itself]." *Miranda*, 384 U.S. at 486.

Hollingsworth voluntarily made the statement about his lucky bullet to Officer Prather. Although Hollingsworth was in custody, his "lucky bullet" statement was not made in response to an interrogation. Officer Prather's statement that they found a bullet in his bag was not the functional equivalent of an interrogation and warranted no kind of response from Hollingsworth. *See Alvarez v. McNeil*, 346 F. App'x 562, 564 (11th Cir. 2009) ("Informing a person in custody of the charges that he faces is normally attendant to arrest and custody and does not constitute interrogation."). Officer Prather testified that she was informing Hollingsworth that he was going to jail and not to the Centers and was telling him the reason for that decision. Her testimony, corroborated by the video, supports this.

Thus, Hollingsworth voluntarily made the statement about his lucky bullet, it was not the product of an interrogation, and does not implicate the *Miranda* rule. *See Villegas-Tello*, 319 F. App'x at 875. Accordingly, Hollingsworth's motion to suppress the statement about his "lucky bullet" is due to be denied.

## IV. RECOMMENDATION

For the reasons stated above, it is RECOMMEDED that Hollingsworth's motion to suppress (Doc. 24) be granted as to the statement confirming ownership of the backpack, but otherwise denied.

**DONE and ENTERED** in Ocala, Florida, on July 23, 2021.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties